DONALD H. HELLER, SBN 55717
DONALD H. HELLER,
A Law Corporation
3638 American River Drive
Sacramento, CA  95825
Telephone: (916) 974-3500
Facsimile: (916) 520-3497

Attorneys for Defendant
Gregory L. Jackson

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CASE NO. 2:11-CR-00090-WBS |
| | ) | |
| Plaintiff, | ) | SENTENCING MEMORANDUM & MOTION FOR A DOWNWARD VARIANCE |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | Sentencing Date: 09-12-2016 |
| GREGORY L. JACKSON, | ) | |
| Defendant. | ) | Hon. William B. Shubb |
| | ) | Senior United States District Judge |
| _____ | ) | |

**I.**

**INTRODUCTION**

A.    **CASE HISTORY**

On March 18, 2011, Defendant Gregory L. Jackson (Mr. Jackson) pleaded guilty

before the Hon. Edward J. Garcia, Senior United States District Judge to Bid Rigging in

violation of 15 U.S.C. § 1, (Sherman Antitrust Act) and Conspiracy to Commit Mail

Fraud, 18 U.S.C. § 1349 committed between February 2009 and October 2009.

Mr. Jackson was first interviewed on February 11, 2010, by a FBI Special Agent and without the benefit of counsel, candidly and accurately described how he first became involved and eventually, much to his regret joined the underlying bid rigging scheme which led to his pleas of guilty in this matter. Mr. Jackson has been fully cooperative with the Government since his first interview and on November 16, 2010, Mr. Jackson sat for an extensive debriefing prior to entering his pleas of guilty in this matter with federal prosecutors and a scribe.

Mr. Jackson's Plea and Cooperation Agreement provides for a possible reduction of sentence for substantial assistance to the government.  For that reason, Mr. Jackson's sentencing has been continued since March 2011, by stipulation on multiple occasions, for the purpose of allow the government to fully determine its sentencing recommendation for Mr. Jackson.

In early 2014, the related case of United States v. Katakis, et al., Cr. No. 2:11-511 WBS, went to trial and on March 11, 2014, a jury returned guilty verdicts against Andrew Katakis and Donald Parker for bid rigging and Mr. Katakis for obstruction of justice.  Mr. Parker and Mr. Katakis moved for a new trial on the bid-rigging charge and Mr. Katakis moved for a judgment of acquittal on the obstruction count. On May 9, 2014, this Court granted Mr. Katakis's Rule 29 motion on the obstruction charge and the government appealed. This Court stayed all proceedings pending the Ninth Circuit's decision and remand.  On August 31, 2015, the Ninth Circuit affirmed this Court's order granting Mr. Katakis's judgment of acquittal.

**U.S. v. Jackson Sentencing Memorandum**
**& Motion for a Downward Variance**

**Case No. 2:11-CR-00090-WBS**

1

2

3

Even though Mr. Jackson was not called as a witness in the <u>Katakis, et.al.</u> trial,
Mr. Jackson' sentence was continued by stipulation in light of the government's position
that:

> The outstanding motions for a new trial remain to be resolved. If those
> motions are granted, the co-conspirators in the above-named cases may
> be called as trial witnesses. The government will not be able to fully
> determine its sentencing recommendation for . . . Jackson . . . until after all
> trials in the related cases have been completed.  [Stipulation and Order
> September 3, 2015, Doc. 41, Case 2:11-cr-00090-WBS, p. 4:1-16].

On March 29, 2016, a Stipulation and Order was filed continuing the Sentencing
to September 12, 2016, scheduling eleven defendants in related cases to the <u>Katakis,
et.al.</u> for imposition of sentence.

## B.    SENTENCING RECOMMENDATIONS

### 1.    The Government's Recommendation

On Friday, August 31, 2016, Trial Attorney Kesley Linnett, Esq., of the Antitrust
Division in a telephone conference with undersigned counsel, informed counsel that the
government will file a motion under USSG § 5K1.1 on September 6, 2016, based on Mr.
Jackson's substantial assistance and will recommend a 10% departure. Ms. Linnett
indicated that she objected to the Probation Department's factual findings that Mr.
Jackson was entitled to a departure of two levels pursuant to USSG § 3B1.2(b) for
minor role in the offense and accordingly, Ms. Linnett, and her colleagues believed that
the total offense level should be 11 for a sentencing range of 8 to 14 months and that
she was going to recommend 7-month term of incarceration taking into account a 10%
reduction for substantial cooperation. As of the time of filing this Sentencing

U.S. v. Jackson Sentencing Memorandum                                    Case No. 2:11-CR-00090-WBS
& Motion for a Downward Variance

1   Memorandum and Motion, the Government has not provided a copy of its 5K1.1 letter or

2   sentencing memorandum.

3       **2.      Plea and Cooperation Agreement [Doc. No. 3] [1]**

4

5       The Plea and Cooperation Agreement (Plea Agreement) was filed on February

6   22, 2011. The Agreement, excludes the Court as party to the agreement, [Doc.3, p.2,

7   Par. B]. [Plea and Cooperation Agreement attached as Exhibit F] The Agreement

8   required Mr. Jackson to fully cooperate with the government, be truthfully and

9   completely in response to all interviews, grand jury or court proceedings, as well as

10  producing any requested documents. [Id., pp.4, Par. D-1, 2 and 3]. Failure to do so or

11  the commission of any additional crimes, would result in a breach of the Agreement

12  would result in a possible revocation of the agreement and possible additional criminal

13  prosecution. [Id. pp. 4-5].

14

15

16      The government's obligation in respect to Incarceration Range was that: "The

17  **government will recommend that the defendant be sentenced to the bottom of the**

18  **applicable Guideline range for his offense, as determined by the United States**

19  **Probation Office."** [Id., p.7, Par. III, A]. [Emphasis added]. The Plea Agreement also

20  provided for a USSG § 5K1.1 motion at time of sentence. [Id. p.7, Par. C.].

21

22      The Plea Agreement recites a Stipulation Affecting Guidelines Calculations: "The

23

24

25

26  ---
    [1] In anticipation of the Antitrust Division's position as expressed above, a discussion of pertinent
    provisions in the Plea and Cooperation Agreement is appropriate, since Mr. Jackson fulfilled all of the
27  obligations required of him and the government is contractual bound to adhere to its obligations in said
    agreement and the government has missed the filing deadline for objecting to the PSR factual findings.
28                                          -4-

U.S. v. Jackson Sentencing Memorandum                    Case No. 2:11-CR-00090-WBS
& Motion for a Downward Variance

government and the defendant agree that there is no material dispute as to the following Sentencing Guidelines variables and therefore stipulate and agree . . .".

The Plea Agreement, Doc. 3, p.11, Par. B:4-21 [Exhibit F], provided the following recitation of guideline stipulations which is placed in a table for convenience:

| Count One – Bid Rigging | | |
|---|---|---|
| § 2R1.1(a) | Base Offense Level | 12 |
| § 2R1.1(b)(1) | Bid rigging | 1 |
| | Total | 13 |
| § 2R1.1(b)(1) | Fine 1-5% of $881,000 | |
| Court Two – Mail Fraud | | |
| § 2B1.1(a)(a)(1) | Base Offense Level | 7 |
| § 2B1.1(b)(a(1)(D) | Loss > $10,000 | 4 |
| | Total | 11 |

The Agreement provided for a guidelines offense level of 13, for an incarceration term of 12 to 18 months and a fine between $8,800 and $44,050. [Id. p.11:19-21]. It also provided for a reduction of 2 levels for acceptance of responsibility and thus an adjusted offense level of 11. Id., lines 22-27. It recommended Restitution of $20,000 [Doc.3, p.3. Par. B] and a Fine of $20,000, [Doc. 3, p. 6 Par. E.].

**2. Final Presentence Report –** (Doc. 49, p. 5). The PSR found the same offense levels in each count as noted above, in the Plea Agreement. The Probation Department's factual findings and analysis, in the PSR recommended a 2 level downward departure based on USSG §3B1.2(b), because:

-5-

The defendant was a minor participant in the overall scheme as compared to other codefendants in this case because he purchased a total of five properties. Additionally, his profit was much lower than others. Therefore, a two-level decrease is recommended. USSG §3B1.2(b). PSR ¶ 55, p. 13].

The Total Offense Level was found to be at a level 9. [PSR ¶ 60]. A level 9 at a criminal history level 1, has a guideline imprisonment range 4-10 months. [PSR ¶ 89]. The balance of ¶ 89 provides the possible alternatives sentences:

Since the applicable guideline range is in Zone B of the Sentencing Table, the minimum term may be satisfied by (1) a sentence of imprisonment; (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in USSG §5C1.1(e), provided that at least one month is satisfied by imprisonment; or (3) a sentence of probation that includes a condition or combination of conditions that substitute intermittent confinement, community confinement, or home detention for imprisonment according to the schedule in USSG §5C1.1(e). USSG §5C1.1(c). [Ibid.].

The Presentence Report recommends a sentence of 1 month on each count concurrently, 24 months of supervised release, a $22,000 fine, restitution in the sum of $20,000 a special assessment in the sum of $200, home detention for three months and 150 hours of community service. [PSR ¶ 110]. The PSR described the justification for the recommendation.

**3. Mr. Jackson Recommendation of a Sentencing Variance:** Mr. Jackson would respectfully urge the Court to favorably consider a term of probation and a period of community service using Mr. Jackson's considerable construction skills to benefit this district and San Joaquin County for the reasons stated hereafter, pursuant to the Plea Agreement provision that: "Defense counsel may argue for a variance or deviation from the Sentencing Guidelines under 18 U.S.C. § 3553(a). The government

-6-

reserves its right to oppose such deviation or variance." [Doc. 3, ¶ B-3, p.12:8-11 Exhibit F].

## II.

## FAILURE OF THE GOVERNMENT TO TIMELY OBJECT

The draft PSR was ECF filed on August 1, 2016. Objections were due on August 15, 2016. Defendant nor the government filed written objections to the Draft PSR. See, [Document 49-1, Exhibit G]. "Pursuant to Local Rule 460(e), counsels' objections as to 'statement of material fact, sentencing classifications, sentencing guideline ranges, and policy statements contained in or omitted from the Presentence Report" were due in this office August 15, 2016'". [Ibid]. Eastern District of California, Local Rule 460(e) states:

> (e) Objections to the Report. Defense counsel shall discuss the presentence report with the defendant. Not less than twenty-one (21) days before the date set for the sentencing hearing, counsel for defendant and the Government shall each deliver to the probation officer and exchange with each other a written statement of all objections they have to statements of material fact, sentencing classifications, sentencing guideline ranges, and policy statements contained in or omitted from the presentence report. After receipt of the objections, the probation officer shall conduct any further investigation and make any necessary revisions to the presentence report.

In light of no formal written objections to the PSR the final PSR was filed on August 22, 2016. It should be noted that the Senior Probation Officer in her Memorandum to Counsel, Exhibit F advised the parties of the failure to timely object:

> According to Local Rule 460(h), except for good cause shown, no formal objections may be made to the Presentence Report other than those which have been previously submitted to the probation officer pursuant to Local Rule 460(e). Also, United States vs. Lopez-Cavasos (915 F 2d 474 - Ninth Circuit) provides, within the Court's discretion, the Presentence Report may be accepted as accurate when counsel fails to follow a local

-7-

U.S. v. Jackson Sentencing Memorandum                                    Case No. 2:11-CR-00090-WBS
& Motion for a Downward Variance

1
2

rule requiring filing of informal objections with the probation officer, in order to resolve issues in dispute, prior to the filing of formal objections with the Court. [Exhibit F, Doc. 49-1]

3
4
5
6
7
8
9

A week after the filing of the Final PSR on August 22, 2016, [Doc. 49], August 29, 2016, the government filed a document titled "United States' Response to the PSR." [Doc. 53].  Clearly, the time to object in conformity with Local Rule 460 was two weeks late, and despite the title, Document 53, appears to be nothing more than thinly veiled, untimely objections to the Draft PSR, a week after the final PSR was filed.  A disappointing filing.

10
11
12
13
14
15
16
17

Even more disappointing is the assertions made by the government in respect to the PSR's (1) Role in The Offense finding, that: ". . .the parties will continue to recommend no adjustment." [Doc. 53:23-24]; and (2) Total Offense Level that: ". . . the parties agree that the total offense level is 11." [Doc. 53:27]. There was no such agreement with the government! That is a fabrication there was such writing or conversation with Ms. Linnett regarding any such agreement.

18
19
20
21
22
23
24
25

While the Plea and Cooperation Agreement provided that, "[t]he parties stipulate and agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments, departures, or cross-references, other than those contemplated in the foregoing stipulations." This stipulation does not bind probation or the court or Mr. Jackson as to concurrence or disagreement with a probation factual finding or conclusion of law in making a recommendation to the Court in a final PSR.

26
27
28

U.S. v. Jackson Sentencing Memorandum
& Motion for a Downward Variance

Case No. 2:11-CR-00090-WBS

In fact, the Plea Agreement plainly states the contemplation of the parties that no matter what the agreement was reached in the plea agreement as to guideline levels, U.S. Probation might well differ.

> The government's obligation in respect to Incarceration Range was that: "The government will recommend that the defendant be sentenced to the bottom of the applicable Guideline range for his offense, **as determined by the United States Probation Office."** [Emphasis added]. [Doc. 3, p.7, Par. III, A - Exhibit F].

This was an important term of the Plea Agreement as accepted by Judge Garcia on March 18, 2011, between the government and Mr. Jackson.  Faces changed on the government's side more than once, but it's same government. Additionally, there is nothing recited in the Plea Agreement binding the Court and/or the Court's sentencing representative and sentencing right arm, if you will, United States Probation to a particular guideline level calculation. In fact, the Plea Agreement specifically and unequivocally excepts the court from being a party bound by the plea agreement in Paragraph B on page 2, titled appropriately, **Court Not a Party**. [Exhibit F, p.2:18-25].

This was not Federal Rules of Criminal Procedure, Rule 11(c)(1)(C)[2] plea agreement which would bind the court if the Court's accepts such a plea agreement.

The government and Mr. Jackson have a contract if you will, a written plea agreement with mutual obligations. Mr. Jackson has fulfilled his part of the bargain. Filing a document titled "United States' Response to the PSR" does not change the fact

---

[2] Rule 11(c)(1)(C) of the Fed.R.Crim.Pro "(C) agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement)."

U.S. v. Jackson Sentencing Memorandum
& Motion for a Downward Variance

Case No. 2:11-CR-00090-WBS

that the government blew its time to object according to the rules, and decided after the

fact to file ill-conceived objections under a different title.  As the Senior U.S. Probation

Officer pointed out to the Court in her Memorandum dated August 22, 2016, [Doc. 49-1-

Exhibit G]:

> According to Local Rule 460(h), except for good cause shown, no formal
> objections may be made to the Presentence Report other than those
> which have been previously submitted to the probation officer pursuant to
> Local Rule 460(e). Also, *United States vs. Lopez-Cavasos* (915 F 2d 474 -
> Ninth Circuit) provides, within the Court's discretion, the Presentence
> Report may be accepted as accurate when counsel fails to follow a local
> rule requiring filing of informal objections with the probation officer, in
> order to resolve issues in dispute, prior to the filing of formal objections
> with the Court.

The Government's Response filed August 29, 2016, can be viewed two ways, the

first, the most cynical, consistent with <u>Burger v. United States</u> admonishment to

government lawyers as to striking "Hard blows not foul blows" comes to mind.[3]  The

second, gives the benefit of the doubt, to an ill-conceived crafting of a document to

avoid a blown deadline.  Either way it is disappointing and suggesting the latter, does

not dissipate the dissatisfaction with the filing of the document but simply takes the high

road.  While this is not a death penalty case, a defendant who has violated the law,

nonetheless, is a human being who is supposed be treated fairly by his government.

**III.**

**5K1.1 COOPERATION DEPARTURE**

USSG § 5K1.1 Policy Statement, "Section 5K1.1 provides for a downward

departure from the guidelines if the government files a motion 'stating that the defendant

---

[3] <u>Berger v. United States</u>, 295 U.S. 78 (1935)

U.S. v. Jackson Sentencing Memorandum                    Case No. 2:11-CR-00090-WBS
& Motion for a Downward Variance

has provided substantial assistance in the investigation or prosecution of another person who has committed an offense.' The amount of the reduction 'shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following . . .'".[4] The 5K1.1 factors are enumerated in Footnote 4. below.

The Ninth Circuit has found that in, "section 5K1.1 departures, just as in any other departure, the government has no control over the extent of the departure." United States v. Udo, 963 F.2d 1318, 1319 (9th Cir. 1992). See, United States v. Live say, 525 F.3d 1081, 1091-92 (11th Cir. 2008) [Compilation of cases on the court's control over the extent of the departure].

# IV.

# RELEVANT SENTENCING LAW

United States v. Booker, 543 U.S. 220, 245 (2005) declared that the mandatory Federal Sentencing Guidelines were henceforth advisory. Booker, and its progeny has returned federal sentencing to where the Constitution reside the power to impose judgment, a federal court judge. After consulting the advisory guidelines, a court must fashion a sentence "sufficient, but not greater than necessary" to comply with the purposes of punishment set forth in 18 U.S.C. § 3553(a)(2). Id.; Kimbrough v. United States, 552 U.S. 85, 111 (2007) ["sufficient, but not greater than necessary"

---

[4] (a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following: The factors are (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance endered; (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;(3) the nature and extent of the defendant's assistance; (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance; (5) the timeliness of the defendant's assistance. 5K1.1(a)(1).

-11-

U.S. v. Jackson Sentencing Memorandum                    Case No. 2:11-CR-00090-WBS
& Motion for a Downward Variance

requirement is the "overarching instruction" of § 3553(a)]; <u>United States v. Carty,</u> 520 F.3d 984, 991 (9th Cir. 2008) (*en banc*).  Those purposes include "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," 18 U.S.C. § 3553(a)(2)(A); "to afford adequate deterrence to criminal conduct," <u>id.</u> § 3553(a)(2)(B); "to protect the public from further crimes of the defendant," <u>id.</u> § 3553(a)(2)(C); and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," <u>id</u>. § 3553(a)(2)(D).

18 U.S.C. § 3661 provides that: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." "Permitting sentencing courts to consider the widest possible breadth of information about a defendant 'ensures that the punishment will suit not merely the offense but the individual defendant.'" <u>Pepper v. United States</u>, 562 U.S. 476, 480 (2011), citing <u>Wasman v. United States</u>, 468 U.S. 559, 564. (1984). is instructive in this case.

<u>Pepper v. United States, supra,</u> was a post-sentencing, appellate remand case; however, the deciding principles should be applicable to a defendant who during a period stated in years and not months between entry of plea of guilty and the imposition of sentence led a law abiding and productive life falls squarely, within § 3661's "no limitation" language as to authorizing as much information as possible for   the sentencing judge.

**U.S. v. Jackson Sentencing Memorandum**                                    **Case No. 2:11-CR-00090-WBS**
**& Motion for a Downward Variance**

In this case, the time frame of law abiding and productive conduct is measured in years as opposed to the approximate ten-week period for the probation investigation and report.  There is no better evidence of self-rehabilitation and focus on making amends for past transgression, than the life Mr. Jackson since entry of plea.  Mr. Jackson has demonstrated in the past five and a half years since entry of plea he has lead a productive an uneventful life with supervision or wrongdoing. Mr. Jackson is an excellent candidate for a sentence of probation.

**V.**

**18 U.S.C. § 3553(a) FACTORS**

**A.     THE SERIOUSNESS OF THE OFFENSE, RESPECT FOR THE LAW, AND JUST PUNISHMENT.**

**1.  Circumstances of the Offense**

The offenses of conviction are felony offenses – serious by definition.

a.     **The PSR accurately describes the offense conduct in ¶¶ 3-12 of the PSR.**  Paragraph 8, page 7, of the PSR describes how defendants Chandler, Northcutt, Ghio and Katakis (Self-described at the Group or Regulars) involved themselves in a scheme to thwart the competitive at the county courthouse foreclosure home sales in San Joaquin County.  "The scheme was to rig bids at the public auction by not competing with each other and by obtaining the property at the lowest price requested by the trustee, paying each other for not bidding, and taking ownership of the rigged properties by concealing the scheme from the trustees." Id.

This "Group" was sophisticated in assessing the real estate market, checking of clean title and did their own drive-by appraisals to assess value. The group designated one of its members to bid and rest of the group refrained from bidding. PSR ¶ 9, p. 7. "In order to keep outside bidders from competing and driving prices up, the Group tried to

-13-

get the other bidders to go away or join in their scheme by telling them to either

cooperate or take their business elsewhere." Id.  Essentially, a not so subtle economic

extortion; but nonetheless, joining the group brought with it criminal culpability.  Mr.

Jackson and others named in ¶ 9, joined the conspiracy.

      b.    **Acceptance of responsibility**

      Mr. Jackson has accepted responsibility for his participation in the conspiracy.

See, ¶¶ 48 and 59 of the PSR and his written Acceptance of Responsibility dated April

28, 2014 attached to the PSR and can be found on p. 26. Attached hereto as Exhibit A,

is a letter from Mr. Jackson to this Court which was filed as Document No. 51

collectively with other character references letters.

          **Mr. Jackson in his letter to the Court wrote of his upbringing:**

> *My entire life I have always prided myself on honesty and trust. I was very*
> *fortunate to be raised by parents who instilled these values in my*
> *upbringing.*
> *My parents and I have been partners in a General Contracting business*
> *since 1988. I started the business in 1986, in 1988 they joined me. From*
> *there we were able to grow the business and our reputation in the industry*
> *as ethical, fair and above all, honest contractors. Over the years I have*
> *supported local nonprofit groups, either by financial donation or*
> *volunteering my time. I continue to support local charity groups.* [Exhibit A,
> p.1].

          **How he got involved:**

> *In 2008, the economy crashed, with no new construction going on, it was*
> *time to switch gears. I attempted to purchase REO properties from*
> *Realtors, but was unsuccessful at it. With a little further research, I learned*
> *about trustee sales. In late 2 008 I began buying homes at the court house*
> *steps.*
> *When first approached by FBI Agent Todd Davis on February 22, 2010, I*
> *fully admitted my participation, explaining in detail my involvement in a*
> *lengthy interview. I was not represented by counsel. I thereafter, retained*
> *Donald Heller to represent me in the matter. In 2010 when I was informed*
> *I would be charged with this crime, I was devastated. Had I understood all*
> *of the implications of what I had done, which began with being extorted*
> *and frozen out of trustee sale bidding which led to my horrible error in*

-14-

*judgment of joining in this scheme to rig prices at the San Joaquin County foreclosure auction at the San Joaquin County Court house, I would never have been involved.* [Exhibit A, p.2].

**His confrontation with the gravity, enormity and consequences of his criminal conduct with his children:**

*Having to sit down with both of my children and explain to them the ramifications of the bad decision I had made was one of the most devastating, embarrassing and humbling times of my life. It broke my heart to have that conversation. I had always lived my life as an example for both of them, I had failed them terribly. I have vowed to make sure I am always a proper role model for them in the future, someone they can look up to, model their lives after and be proud of.* [Exhibit A, p.3].

**His remorse:**

*There has not been a single day that I have not thought about the terrible decisions I made in 2009. This has been the biggest regret of my Life. Through talking about it with my wife, family and close friends I have worked very hard at trying to get back to a normal work and personal life. Those bad decisions will haunt me for the rest of my life.* [Exhibit A, p.3].

*I cannot tell you how many times I have thought over and over again as to how I got involved, I don't wish to makes excuses for my conduct, I merely wish to say that this has been the most humbling and painful experience in my life. I am so thankful it will be over soon. [Exhibit A, pp. 3-4]*

*As a contractor I have built many custom homes and rehabilitated many homes. I have always treated my customers, subcontractors and suppliers with the utmost respect. As a result, I have been able to provide my valued customers a product they can be proud of, in turn building the reputation as an ethical, honest and fair contractor. Seven months of criminal conduct really does not reflect me as person. I realize I am a now felon. If someone asked me to shoplift to commit some other fraudulent act I would have repelled from it, without a second thought. I never thought of the bid rigging conduct as criminal, I now fully understand that it is, and I so deeply regret my actions and involvement.* [Exhibit A, p. 4]

//
//

-15-

### 2.  Characteristics of the Offender

The PSR accurately describes the characteristics of Mr. Jackson in ¶¶ 71 to 87; however, those characteristics do not tell the entire story, and a reflection of Mr. Jackson is presented in his letter to the Court, attached as Exhibit A.

There are four character letters which are attached to the PSR and have been submitted to you and which are attached hereto as Exhibits B (Jeff Olsen), C. (John Stewart) D. (Dan Loomis) and E (Richard LeBaron).  The letters reflect that Mr. Jackson is a good and decent man, albeit, one who has stepped over the line and now stands before you as a defendant.  Mr. Loomis's letter is instructive in respect to Mr. Jackson's charitable work and in particular, raising money for the Lodi High School Track and Field restoration project and Mr. Loomis's comment that, *"I feel as though Greg consistently gives more to those around him than he takes or asks for in return. His selfless behavior is a big reason why I stand firm behind him as a professional colleague and friend."* [Exhibit D p. 2].

Mr. Loomis end's his letter with the following paragraph:

> *The housing market in the San Joaquin valley suffered significantly between March 2009 and October 2009 as property values fell more than 50% in a very short amount of time. The level of uncertainty in the market place had nearly everyone on edge as nobody had ever experienced so much uncertainty. Greg's involvement in the bid rigging incident that occurred in that timeframe was completely out of character. I've known Greg for a long time and he holds the upmost character. That event was completely aberrant from his life. In my eyes, Greg Jackson is a pillar within the community and we welcome his continued positive influence for many years to come.* [Exhibit D, p. 4].

### 3.  Guidelines and Policy Statements.

The PSR in ¶¶ 49 to 60 accurately calculate the total Offense Level of 9.

-16-

Of note, is that in ¶ 55, Probation recommends an adjustment downward for being a minor participant in the scheme because ". . . as compared to other codefendants in this case because he purchased a total of five properties. Additionally, his profit was much lower than others."  Minor role is clearly, indicated as Probation found.

## B.   DETERRENCE

Mr. Jackson's acceptance of responsibility has been abundantly demonstrated by the PSR and his letter to this Court attached as Exhibit A.  Since Mr. Jackson's first interview with the FBI in February 2010, more than six years ago, it clear, Mr. Jackson has not only admitted his participation in the offense conduct, but also has expressed a sincere appreciation of his wrongdoing and the reasons why he will never violate the law again.

## C.   PROTECTION OF THE PUBLIC

Mr. Jackson does not present a danger to society.

## D.   THE NEED FOR CORRECTIONAL TREATMENT.

There is no need for treatment in or out of custody. Mr. Jackson stated best in his letter to the Court:

> *My sincere hope is to redeem myself in the eyes of the court because I have always tried to be honest and fair to others. I realize I made a monumental mistake, regardless that it was not apparent to me at the time, it is crushing in reflection of all that I feel I stand for. My wife, my children, my parents have all suffered as a result. Each day I strive to right that wrong.*
> [Exhibit A, p. 4].

//

//

-17-

## VI.

## DOWNWARD VARIANCE TO A SENTENCE OF PROBATION

In <u>Koon v. United States</u>, 518 U.S. 81, 113, (1996), a pre-<u>Booker,supra,</u> decision, the Supeme Court asserted that:

> It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.

And it is to the district judge to whom the responsibility for sentencing is delegated – particularly, since <u>Booker</u>.  It is without dispute, that a district judge has far more experience and familiarity with sentencing guideline issues, the individual defendants and sometimes, a superior knowledge of facts gained from the assignment of related cases as well as sitting as the trial judge, in a related case before a jury.  In fact, a trial judge, is generally, far more experienced in imposing sentence than appellate courts and the Federal Sentencing Commission. See, <u>Rita v. United States,</u> 551 U.S. 338, 357–58 (2007). And certainly, more astute and objective than a prosecutor who wishes to control the sentence.

Since <u>Booker,</u> and its progeny, formalistic guidelines applications which confined judges from considering the individual who committed the offense, have been replaced by a return to § 3553(a) factors which focus far more on the individual that the now advisory guidelines.  <u>Gall v. United States</u>, 552 U.S. 38, 50. The guidelines become a secondary source, and a trial judge in determining a sentence ". . . may not presume that the Guidelines range is reasonable." <u>Ibid.</u>

-18-

The notion that a sentence outside of the guideline range is presumptive unreasonable has been refuted in Gall v. United States, Id. p. 47. So too has the argument that a sentence of probation represents a 100% departure from a guidelines sentence of even one month and accordingly, is unreasonable. Ibid.

Gall, supra, is enlightening in that it recognizes that,

> [C]ustodial sentences are qualitatively more severe than probationary sentences of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. See United States v. Knights, 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled' " (quoting Griffin v. Wisconsin, 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987); internal quotation marks omitted)).4 Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. USSG § 5B1.3. Most probationers are also subject to individual "special conditions" imposed by the court. Gall, for instance, may not patronize any establishment that derives more than 50% of its revenue from the sale of alcohol, and must submit to random drug tests as directed by his probation officer. Gall v. United States, supra, pp. 48-49.

This is not a case in which Mr. Jackson transformed his lifestyle from one of criminality to lawfulness; rather Mr. Jackson was a good, decent and law abiding person before the crimes charged, but unfortunately, participated in transactions as disclosed in the offense conduct by bad decision making that resulted in criminal conduct.  A derailment from a law abiding lifestyle and a reversion back to that lifestyle, with clearly demonstrated atonement for his behavior.

Turning to the ultimate question, What is "sufficient, but not greater than necessary" for the purposes of punishment under § 3553(a)?  Sufficient, in the context

-19-

of § 3553(a), is synonymous with "just".  The sentence to be imposed must provide . . .

"just punishment for the offense". 18 U.S.C. § 3553(a)(2)(A). [Emphasis added].  What

is a just sentence?

The legendary jurist, Judge Jack Weinstein of the Eastern District of New York in

United States v. Hawkins, 380 F. Supp. 2d 143 (EDNY 2005) addressed a sentence

variance in a self-rehabilitation using a totality of the circumstances analysis.  The

Hawkins opinion analyzed all of the factors a district court must consider with copious

citations to learned treatises, articles and case authority and the sentence guidelines.

Judge Weinstein asks the rhetorical questions, "What is rehabilitation? Is the aim of

rehabilitation to improve or restore? What makes rehabilitation "extraordinary"? Id.

p.147. The rejoinder was a quotation from Morris B. Hoffman & Timothy H. Goldsmith,

The Bio-logical Roots of Punishment, 1 OHIO ST. J. CRIM. LAW 627, 627, 638 (2004):

> The mysteries of the human condition are nowhere more apparent than in
> our criminal courts, where judges must struggle daily with remarkably
> profound and often unanswerable questions. What is the nature of good and
> evil? Why do people commit crimes? Why do we all, as David Hume once
> wrote, contain a particle of the dove next to elements of the wolf and the
> serpent? Why do the wolf and serpent prevail in some of us so often and so
> violently, yet in others of us so seldom and so mildly? Looming in the
> foreground is yet another profound question, one that has been the subject
> of jurisprudential debate, and great confusion, since the dawn of law: Why
> do we punish wrongdoers? Each of us hears conflicting and often
> inarticulate inner voices, one asserting that even the most contrite and
> reformed sinners must still pay some price for their sins, the other calling
> for mercy and forgiveness and asking us to empathize with the criminal. So
> it is not surprising that collectively we struggle to balance the form and
> amount of punishment that is appropriate, a struggle that lies at the heart of
> what we mean by "justice." United States v. Hawkins, supra, p.148.

//

//

-20-

U.S. v. Jackson Sentencing Memorandum                                    Case No. 2:11-CR-00090-WBS
& Motion for a Downward Variance

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VII.**

**CONCLUSION**

In a federal white collar prosecution, most lawyers would stand on their head and fully accept the very well-documented reasons set forth in the PSR, prepared by a diligent and high-regarded senior probation officer. The is an adequate basis for a sentence of probation. Once a 5K1.1 motion is made the Court can impose probation.

Mr. Jackson violated the law more than seven years ago. He has been involved in the federal criminal justice system for more than six years and has awaited sentence for more than five and half years.  Fore the reasons stated in this Sentencing Memorandum and Motion for a Downward Variance, it is respectfully submitted that this Court favorably consider a sentence of Probation for a term of two years and a period of community service time where he can use his skills to benefit this district and San Joaquin County.  Such a sentence will accomplish the objective of federal criminal sentencing. Probation is not reward in this matter, rather it is a sentence within the contours that define this Court's discretion to impose a sentence "sufficient, but not greater than necessary" to discharge the Court's responsibility under the law.

Respectfully submitted,

DONALD H. HELLER
A Law Corporation

Dated:   September 6, 2016

 /s/ Donald H. Heller
DONALD H. HELLER
Attorney for Defendant

-21-